UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

WAYNE IRVIN,

Petitioner,

v.

ATTICA C.F.,

Respondent.

DECISION AND ORDER
15-CV-291-A

———————————————————————

Petitioner Wayne Irvin, a prisoner in state custody, has filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1), challenging the constitutionality of the judgment entered against him on September 4, 2012, in New York State, Cattaraugus County Court. For the reasons set forth below, the Petition (Dkt. No. 1), is **DISMISSED**.

## BACKGROUND

### I.     State Court Proceedings

#### A.  Indictment and Suppression Hearing

Petitioner was indicted on Rape in the First Degree (New York Penal Law § 130.35(3)); Criminal Sexual Act in the First Degree (*id.* § 130.50 (3); Sexual Abuse in the First Degree (*id.* § 130.65(3)); and Endangering the Welfare of a Child (*id.* Penal Law § 260.10). The charges stemmed from Petitioner's alleged rape and sexual abuse of his four-year-old niece, W.H., at his home on August 15, 2011.

Prior to trial, Petitioner moved to suppress the written statement he gave on October 13, 2011, to Captain Michael Marsfelder and Sergeant Ronald Richardson of the Olean Police Department. At the *Huntley* hearing held on April 16, 2012, the People called Marsfelder; the defense presented no witnesses. Crediting Marsfelder's testimony (H: 3-15),[1] Cattaraugus County Court Judge Himelein ("trial court") found that under the circumstances described by Marsfelder, someone innocent of a crime would not have believed he was in custody, "especially after being allowed to leave after giving an incriminating statement." Further, the trial court found, "even if he was, there was a valid *Miranda* warning and waiver, and [he] willingly agreed to speak with Officer Marsfelder." Therefore, the trial court held the written statement to be admissible. (H: 15-16).

### B. Trial

#### 1. The People's Case

W.H.'s mother, A.V., testified that Petitioner was her biological brother. A.V. had four children under nine, including four-year-old W.H. A.V. and Petitioner lived together until she was placed in foster care at age eight. As an adult, A.V. reconnected with members of her birth family, including Petitioner. In the summer of 2011, A.V. and her husband were in the process of moving back to the Olean area. Petitioner and his live-in girlfriend, Bonnie Bremiller, volunteered to babysit for four-

---

[1] References preceded by "H" are to pages in the consecutively paginated transcript of the April 16, 2021, suppression/*Huntley* hearing held in Cattaraugus County Court (Himelein, J), and available at Dkt. No. 17-3, pp. 2-17.

year-old W.H. and her brother while A.V. completed the move on August 15, 2011. (T: 47-50).[2]

Petitioner and Bremiller were supposed to watch W.H. for a few days, but they brought her home after the first night because W.H. would not stop crying. W.H. had never been left in a man's care prior that time. After she came home from Petitioner's home, W.H. would not sleep alone and did not want the lights off. (T: 50-52).

About two months later, A.V. had a conversation with W.H. about "good touching" and "bad touching." W.H. started to disclose something, at which point A.V. called Child Protective Services. A.V. brought W.H. to the Children's Advocacy Center on October 13, 2011. (T: 50-52).

Dr. Salzmann, a pediatrician with advanced training in child sexual abuse cases, performed a pelvic examination of W.H. on October 13, 2011, at the Children's Advocacy Center. (T: 28-34). Using a colposcope to magnify and photograph W.H.'s vaginal area, Dr. Salzmann observed two healed, "notched out" out areas on W.H.'s hymenal ring. (T: 34-35). The notches indicated "some sort of blunt force trauma to the area" (T: 36), caused by some type of object or body part. (T: 38). Because the notches were "deep," they did not represent a normal variation of the hymen. (T: 46). Dr. Salzmann opined it was "[h]ighly unlikely" that W.H. could have caused the injury herself; it would have been too painful, so W.H. would have stopped. (T: 38). Although

---

[2] References preceded by "T" are to pages in the consecutively paginated trial transcript held on June 12-13, 2012, in Cattaraugus County Court (Himelein, J.), and available at Dkt. No. 17-3, pp. 18-282.

Dr. Salzmann could not tell exactly when the injuries occurred, the state of healing was consistent with force inflicted two months prior to the examination. (T: 37-38).

Also on October 13, 2011, W.H. was interviewed by a social worker at the Children's Advocacy Center. Marsfelder observed the interview through closed-circuit television and testified that W.H. described "sexual incidences having occurred to her". (T: 74). Marsfelder testified that since "[t]here was a disclosure that the suspect was Wayne Irvin" during the interview, he and Richardson went to Petitioner's apartment later that evening. (T: 58-59, 74-75).  At the officers' request, Petitioner agreed to come to the station for an interview.  He was driven there by Bremiller who waited for him while he talked to the officers.

Once Petitioner arrived, Marsfelder and Richardson brought him to an office; Petitioner was not handcuffed or restrained in any way. Marsfelder recited the *Miranda* warnings to Petitioner. Petitioner waived his rights and agreed to speak to the officers. (T: 60-61, 77-79). Marsfelder told Petitioner that there was an "allegation that he had sexually abused [W.H.]." (T: 76-77). Petitioner claimed that W.H. had never spent the night at his apartment or spent any time there without her mother being present. (T: 62, 77). Richardson left the room and talked to Bremiller about half an hour. He then brought Bremiller into the interview room with Petitioner and asked her, in his presence, if W.H. had ever spent the night. After Bremiller answered, she was excused. The officers continued to talk with Petitioner, urging him to tell them the truth. (T: 62-64, 76-77).

Later during the interview, Petitioner provided a different version of events, which Marsfelder typed out. Once it was completed, the officers had Petitioner review it and make sure it was correct; he then signed it. (T: 64-65, 79-81).  His statement was admitted as People's Exhibit 1, and Marsfelder read it to the jury. (T: 82-85). In it, Petitioner stated that he became sexually aroused by seeing W.H. naked after she got out of the shower. He brought W.H. into his bedroom and began touching her vagina with his fingers. (T: 83-84).  After licking her vagina for a while, he began rubbing his erect penis on her vagina. (T: 84). Petitioner said his penis "may have went into" W.H.'s vagina "a little" but he was "not sure." (T: 84). W.H. was "crying" which made Petitioner realize what he was doing "wasn't right". (T: 84). He then lost his erection and stopped what he was doing. Petitioner stated that he was sexually abused as a child, and that may be why he "did what [he] did." (T: 84). He expressed regret for his actions and said he "really need[ed] help." (T: 84). Petitioner said Bremiller was not home at the time of the incident. (T: 84).

### 2.  The Defense Case

Bremiller testified that, according to her diary, she and Petitioner did not see W.H. on August 15, 2011, but she did see W.H. on August 5, 2011. On August 15th, they visited Russell Irvin, Petitioner's brother, and Petitioner's grandmother during the day and spent the early part of the evening playing bingo. After bingo ended at 9:30 pm., they went home and watched a movie. (T: 103-06).

Bremiller admitted she recently pled guilty to petit larceny for stealing from a tool company; she received no jail time or probation. She admitted getting in "some

trouble" for dating a minor but claimed the case had been dismissed. Even when shown the criminal history, she claimed not to remember pleading guilty to sexual misconduct in satisfaction of third-degree rape based on that incident. Bremiller also claimed not to remember being arrested for, or pleading guilty to, third-degree attempted false report of an incident in July of 2001. (T: 106-10).

Russell and his girlfriend, Nicole Reynolds, testified that in June of 2011, A.V., her husband, and their four children, including W.H., appeared at their trailer looking for a place to stay. They all stayed with Russell and Reynolds for about three weeks, but then W.H. and one of her siblings went to stay with Russell's other brother, Richard Irvin, for about two weeks in mid-July. Richard lived with his three kids in a camper up the hill. Russell and Petitioner went apartment-hunting with A.V. and found her a place within about three or four days. (T: 94-98, 113-14).

Reynolds testified that sometime towards the end of June, she helped bathe W.H. and noticed her vaginal area was "really red". (T: 95-96). On cross-examination, Reynolds said it "looked like [the area] was blistering" but did not look like an infection or irritation; instead, it looked as if W.H. had been "spread open". (T: 99-100). Reynolds later testified that it looked "[l]ike a medical condition" rather than "abuse". (T: 100). Reynolds told A.V. what she had observed and asked if W.H. was getting medical care; Reynolds was not satisfied with A.V.'s response but did not call Child Protective Services.

Russell testified that on August 15, 2011, Petitioner, Bremiller, and a person named Waldemar Way stopped by to pick up some scrap metal. They left after about

6

twenty minutes, saying they were going to bingo. (T: 115).  Russell admitted that he recently completed parole for a 2002 stolen property conviction; that in 1998, he pleaded guilty to sexual misconduct in a case in which he had also been charged with endangering the welfare of a child; and that he pleaded guilty to promoting prison contraband in 2005 for having a tattoo gun. He could not recall pleading guilty in 2001 to child endangerment and receiving three years of probation.  Russell denied sexually abusing W.H. (T: 111, 115-18).

### C. Conviction and Sentence

The jury returned a verdict convicting Petitioner on all counts. (T: 164-65). At sentencing on September 4, 2012, Petitioner was found to be a predicate felony offender. (S: 2).[3] The trial court imposed an aggregate term of 57 years in prison (i.e., consecutive prison terms of 25 years on both the rape and criminal sexual act convictions and seven years on the sexual abuse conviction, each to be followed by ten years' post-release supervision, along with a concurrent one-year prison term on the child endangerment conviction). (S: 5-6).

### D. Direct Appeal

Represented by new counsel, Petitioner pursued a direct appeal. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction on November 8, 2013. *People v. Irvin*, 111 A.D.3d 1294, 974 N.Y.S.2d

---

[3] References preceded by "S" are to pages in the consecutively paginated sentencing transcript, held on September 4, 2012, in Cattaraugus County Court (Himelein, J.), and available at Dkt. No. 17-3, pp. 283-288.

214 (4th Dept. 2013). The New York Court of Appeals denied leave to appeal. *People v. Irvin*, 24 N.Y.3d 1044 (2014), *recons. denied*, 26 N.Y.3d 930 (2015).

## II.    Federal Habeas Proceeding

The timely[4] Petition (Dkt. No. 1) raises the following grounds for relief: (1) trial counsel was ineffective for numerous reasons (Ground One – Ineffective Assistance), *see* Dkt. No. 1, ¶¶ 22(A), 23; (2) the Sixth Amendment's Confrontation Clause was violated by W.H.'s failure to testify and Marsfelder's testimony about his observations of W.H.'s interview with the social worker (Ground Two – Confrontation Clause), *see* Dkt. No. 1, ¶ 22(B); (3) the trial court erroneously denied the suppression motion (Ground Three – Suppression), *see* Dkt. No. 1, ¶ 22(C); and (4) the jury was not impartial due to the presence of the two jurors trial counsel should have excused for cause (Ground Four – Juror Issue), *see* Dkt. No. 1, ¶ 22(D).

Respondent filed a Redacted Response (Dkt. No. 15), Redacted Memorandum of Law (Dkt. No. 15-1), Table of Contents for the State Court Record (Dkt. No. 15-2),

---

[4]    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, applicable to this petition, provides a one-year limitations period which begins to run on the latest of four dates. 28 U.S.C. § 2244(d)(1)(A)-(D). Here, the limitations period began to run on "the date on which the judgment became final by the conclusion of direct review or expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). For purposes of § 2244(d)(1)(A), a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of *certiorari* or when the time to seek *certiorari* has expired, which is 90 days following the date on which direct review by the state's highest court is complete. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); U.S. Sup. Ct. R. 13(1). The New York Court of Appeals denied Petitioner's request for leave to appeal on November 13, 2014, and upon reconsideration, denied leave to appeal again on October 10, 2015. Using the latter of these two dates to calculate the time in which Petitioner could seek *certiorari*, his conviction became final on January 11, 2016. *See Mateos v. West*, 357 F. Supp. 2d 572, 575 (E.D.N.Y. 2005).

Redacted State Court Record (Dkt. No. 15-3), and Redacted Transcripts (Dkt. No. 15-4). The Court granted the Motion to Seal (Dkt. No. 13), and Respondent filed, under seal, unredacted versions of the documents docketed at Dkt. Nos. 15-1 to 15-4. *See* Dkt. No. 17 to 17-3.  For his Reply, Petitioner filed a one-page letter (Dkt. No. 19).

Respondent asserts that that Ground One (Ineffective Assistance) is exhausted and meritless. As for Grounds Two (Confrontation Clause), Three (Suppression), and Four (Juror Issue), Respondent asserts that they are unexhausted but must be deemed exhausted and procedurally barred. Respondent also contends that Grounds Two (Confrontation Clause) and Four (Juror Issue) are procedurally defaulted because the Appellate Division relied on an adequate and independent state ground to dismiss them. Alternatively, Respondent argues, these three grounds lack merit.

As discussed further below, the Court agrees that Grounds Two (Confrontation Clause) and Three (Suppression) are unexhausted but must be deemed exhausted and subject to an unexcused procedural default. As for Ground Four (Juror Issue), it appears to be unexhausted but should not be deemed exhausted and procedurally defaulted. Nonetheless, Respondent is correct that Ground Four (Juror Issue) also may be dismissed as procedurally defaulted under the adequate and independent state ground doctrine. As for Ground One (Ineffective Assistance), the Court finds that it is unexhausted but that can be dismissed under the authority of 28 U.S.C. § 2254(b)(2).

## DISCUSSION

### I.   Federal Review of State Convictions

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was ... [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).   A state law error is therefore insufficient for habeas corpus relief unless it rises to a level that implicates a federal constitutional right. *Wainwright v. Goode*, 464

U.S. 78, 86 (1983) (per curiam). To meet that standard, Petitioner must demonstrate that the error had a "substantial and injurious effect or influence" on the jury's verdict. *Headley v. Tilghman*, 53 F.3d 472, 474 (2d Cir. 1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Finally, a federal court may not grant the habeas petition of a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b)(1).   To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of "the same federal constitutional claim[s] that he now urges upon the federal courts to the highest court in the pertinent state." *Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001) (internal citations and quotation marks omitted).

"In New York, to invoke 'one complete round of the State's established appellate review process,'" *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)), "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Id.* (citations omitted). "The application for leave to the Court of Appeals may be in letter form." *Id.* (citing N.Y. Ct. R. § 500.10(a)[5]  (McKinney 1999)).

---

[5]  Effective December 29, 2020, the substance of N.Y. Ct. R. 500.10(a) is now codified at N.Y. Ct. R. 500.20.

"New York Court rules require that leave applicants submit to the Court of Appeals briefs and other documents from the lower courts to 'identify the issues on which the application is based' and to pay '[p]articular written attention . . . to identifying problems of reviewability and preservation of error.'" *Id.* (quoting N.Y. Ct. R. § 500.10(a) (McKinney 1999); ellipsis and alteration in original).

## II.   Grounds Two and Three Must Be Deemed Exhausted and Procedurally Defaulted

Respondent argues that Grounds Two (Confrontation Clause), Three (Suppression), and Four (Juror Issue) are unexhausted because they were not presented to the New York state courts for one complete round of appellate review. Respondent notes that while they were raised in the opening brief to the Appellate Division as Points I, II, and III (*see* SR: 002-003, 009, 016-029)[6], they were not included in the leave application (SR: 228-232) to the New York Court of Appeals. Petitioner has not responded to this argument.

Here, appellate counsel focused solely on the ineffective assistance of counsel claim in the leave letter. (SR: 228-232). She did not mention the suppression claim, even in passing.  She did not mention the Confrontation Clause or juror-partiality claims except as examples of objections trial counsel should have raised but did not. (SR: 228-229). She specifically requested further appellate review only as to the

---

[6] References preceded by "SR" are to pages in the consecutively, paginated, Bates-stamped exhibit containing state court records filed by Respondent, and available at Dkt. No. 15-3.

ineffectiveness issue, stating that "[i]neffective assistance of counsel is an issue of ongoing statewide importance, deserving of Court of Appeals consideration." (SR: 232). Finally, although she did state she was enclosing the appellate briefs, that was a requirement under the Court of Appeals' rules, *see Galdamez*, 394 F.3d at 74, and does not amount to a request for review of any issues raised in the briefs. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991); *see Jordan v Lefevre*, 206 F.3d 196 (2d Cir. 2000). Based on *Grey* and *Jordan*, the Court finds that the leave application in Petitioner's case did not fairly apprise the New York Court of Appeals that leave was being sought as to the Confrontation Clause claim (Ground Two), the suppression claim (Ground Three), or the juror-partiality claim (Ground Four).

"For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (quotations omitted).  Where the petitioner has no available means of exhausting a claim in state court, it will be "deemed exhausted" by the federal court. *Grey*, 933 F.2d at 120 (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *see* 28 U.S.C. § 2254(c).

"New York's procedural rules prevent [Petitioner] from attempting to raise [Grounds Two, Three, and Four] for a second time before the New York Court of Appeals since he already has used the one direct appeal to which he is entitled." *Blocker v. Graham*, No. 6:17-CV-06648-CJS, 2022 WL 309952, at *17 (W.D.N.Y. Feb. 2, 2022) (citing *Zacher v. Graham*, No. 6:14-CV-06027(MAT), 2016 WL 368086, at *7

(W.D.N.Y. Feb. 1, 2016) (citing *Cunningham v. Conway*, 717 F. Supp. 2d 339, 365 (W.D.N.Y. 2010)) (citing N.Y. R. Ct. § 500.20(a)(2), (d); other citations omitted)).

Collateral review by means of a motion to vacate pursuant to New York Criminal Procedure Law § 440.10(1) is foreclosed at least as to Grounds Two (Confrontation Clause) and Three (Suppression) under C.P.L. § 440.10(2)(a), which provides that:

> the court must deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined *on the merits* upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue. . ..

N.Y. Crim. Proc. Law § 440.10(2)(a) (emphasis supplied).   Here, the Appellate Division denied Ground Three on the merits, holding that the trial court "properly refused to suppress the written statement that [Petitioner] made to a police witness." *Irvin*, 111 A.D.3d at 1295. Petitioner does not and cannot argue that there has been a retroactively effective change in the law since the time of his direct appeal.

Regarding Ground Two (Confrontation Clause), the Appellate Division held that both subclaims within it were "unpreserved for [appellate] review" but went on to reject them on the merits. *Irvin*, 111 A.D.3d at 1295. "[T]here is no requirement in CPL § 440.10(2)(a) that the "on the merits" determination on direct appeal be in a decision in which no alternative holding is provided." *Jones v. Miller*, No. 03CIV.6993SHSGWG, 2004 WL 1416589, at *9 (S.D.N.Y. June 25, 2004). As with Ground Three (Suppression), which was rejected solely on the merits, Petitioner does not and cannot argue that there has been a retroactively effective change in the law since the time of his direct appeal. Therefore, the Court concludes that Grounds Two (Confrontation) and Three (Suppression) would be procedurally barred if he returned

to state court and attempted to raise them in a C.P.L. § 440.10 motion.[7] *See Grey*, 933 F.2d at 120 ("Collateral review of these claims is also barred because the issues were previously determined on the merits on direct appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(a)"). Because Petitioner has not fulfilled the cause-and-prejudice test, *see*, *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985), or the fundamental miscarriage of justice exception, *see*, *Murray v. Carrier*, 477 U.S. 478, 496 (1986), Grounds Two (Confrontation Clause) and Three (Suppression) are subject to an unexcused procedural default.

However, it does not appear that Ground Four (Juror) would be barred by C.P.L. § 440.10(2)(a) because the Appellate Division did not reach its merits, instead relying on two state procedural rules to find it unpreserved and unripe. *See Irvin*, 111 A.D.3d at 1295 (citations omitted).

### III.   Ground Four Is Procedurally Barred Under the Adequate and Independent State Ground Doctrine

The Supreme Court generally will not consider an issue of federal law on habeas review of a state-court judgment "if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). "[A]n adequate and independent  finding of procedural default will bar federal habeas review of the federal claim," *id.* at 262, unless the petitioner establishes cause for the default and resulting

---

[7] As discussed below in the following section, the Court finds that Ground Four is procedurally defaulted under the adequate and independent state ground doctrine based on the Appellate Division's reliance on the state procedural rules to dismiss it.

prejudice or shows that the habeas court's failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* (citations omitted).

Regarding the "independent" prong, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Id.* at 261-62 (quotation and alteration omitted). A rule is "adequate" when the state court's "application of the procedural rule is 'firmly established and regularly followed' in consideration of the specific circumstances presented in a case." *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006). Federal courts "review *de novo* the issue of whether the procedural ground is 'adequate' to support the judgment." *Id.* at 240–41.

The Appellate Division here rejected Ground Four (Juror Issue) by relying on two state procedural rules. *See Irvin*, 111 A.D.3d at 1295. First, the Appellate Division found that by failing to raise the juror challenge in the trial court, Petitioner failed to preserve it for appellate review. *Id.* The first rule on which the Appellate Division relied, although not specifically cited, was New York's contemporaneous objection rule. Codified at C.P.L. § 470.05(2), this preservation rule "'requires, at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error.'" *Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir. 1999) (quoting *People v. Luperon*, 85 N.Y.2d 71, 78 (1995)).

In any event, the Appellate Division found, even if Petitioner had challenged the two jurors and his challenges had merit, they "nevertheless would not be properly

before [the court] because he failed to exhaust his peremptory challenges prior to the completion of jury selection." *Irvin*, 111 A.D.3d at 1295. Although not cited, the rule on which the Appellate Division relied here was C.P.L. § 270.20.  That rule provides, "[a]n erroneous ruling by the court denying a challenge for cause by the defendant does not constitute reversible error unless the defendant has exhausted his peremptory challenges at the time or, if he has not, he peremptorily challenges such prospective juror and his peremptory challenges are exhausted before the selection of the jury is complete." N.Y. Crim. Proc. Law § 270.20(2) (McKinney); *see also*, *People v. Lynch*, 95 N.Y.2d 243, 248 (2000); *People v Culhane*, 33 NY2d 90, 97 (noting that CPL 270.20 codified the common-law rule that required exhaustion of peremptory challenges to have aggrievement).

Here, the state procedural rules relied on by the Appellate Division were "independent" of the judgment. The Appellate Division clearly invoked the state's preservation requirement and the requirement that peremptory strikes be exhausted in order for the denial of a for-cause challenge to be cognizable on appeal. These rules were the only bases for the Appellate Division's decision; it did not rule in the alternative on the merits of Ground Four. *See Harris*, 489 U.S. at 264 n.10 ("[A]s long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas.").

The Court finds that C.P.L. § 470.05(2) is adequate, since it is routinely relied on by the Appellate Division in the same type of circumstances as presented in

Petitioner's case. *See*, *e.g.*, *People v. Stepney*, 93 A.D.3d 1297, 1297–98, 940 N.Y.S.2d 752 (4th Dept. 2012). Additionally, C.P.L. § 270.20 is perhaps even more firmly established and regularly followed in this exact context, since it explicitly precludes a defendant from obtaining reversal if he had peremptory strikes he could have used to strike the prospective juror he claims should have been dismissed for cause. District courts in this Circuit have held that C.P.L. § 270.20 is an adequate and independent state ground that renders such claims procedurally defaulted and forecloses habeas review. *See Jones v. Poole,* No. 05 Civ. 0886 (VEB), 2010 WL 1949599, at *6 (W.D.N.Y. May 13, 2010) ("This Court is barred from exercising federal habeas review over [Petitioner's] challenge for cause claim by operation of N.Y. Criminal Procedure Law § 270.20(2), an independent and adequate state law[.]").

The Court concludes that both C.P.L. § 270.20 and C.P.L. § 470.05(2) each individually constituted an adequate and independent state ground for the Appellate Division's dismissal of Ground Four.  Accordingly, the adequate and independent state ground doctrine bars habeas review unless Petitioner shows cause and prejudice or a fundamental miscarriage of justice.As discussed above in connection with Grounds Two (Confrontation Clause) and Three (Suppression), Petitioner has not demonstrated cause and prejudice or made the showing of factual innocence required to fulfill the fundamental miscarriage of justice exception. Therefore, he cannot overcome the procedural default as to Ground Four.

## IV.  Ground One Is Unexhausted

Respondent asserts that Ground One is exhausted because Petitioner asserted all the allegations in paragraph 22(A) of the petition in support of the ineffective assistance trial counsel claim he raised on direct appeal. That is accurate; the allegations listed in paragraph 22(A) mirror those raised on direct appeal in Petitioner's appellate brief (SR: 001-050) and leave letter (SR: 228-232). However, Respondent overlooks the fact that Petitioner included an additional allegation of ineffectiveness in paragraph 23—that trial counsel made Petitioner's parents "bring him $500 for a doctor," but the doctor was "never at [his] trial." (Dkt. No. 1, ¶ 23). Because this claim was not mentioned at trial, Petitioner states, it was not able to be brought up on direct appeal. (*Id.*).  The ineffective assistance of trial counsel claim being presented to this Court thus consists of the allegations in paragraphs 22(A) and 23.

For a habeas court to reach the merits of an ineffective assistance counsel claim, all the supporting factual allegations must have been fairly presented to the state courts, to allow them the "opportunity to consider all the circumstances and cumulative effect of the claims as a whole." *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991). Here, nearly all of Petitioner's allegations of ineffectiveness involve matters appearing on the record, but the allegation regarding "the doctor"—presumably a medical expert witness—involves matters outside the record. Thus, Petitioner has presented a "mixed claim" of ineffective assistance. *Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016). "Where a defendant presents a mixed claim of ineffective

assistance, such a mixed claim, presented in a [C.P.L.] Section 440.10 motion, is not procedurally barred, and the Section 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety." *Id.* In addition, effective October 25, 2021, the New York Legislature amended C.P.L. § 440.10(2)(c) to remove the mandatory bar for claims of ineffective assistance of counsel. *See* N.Y. Legis. 501 (2021), 2021 Sess. Law News of N.Y. Legis. Memo Ch. 501 (McKinney).

Because Petitioner still could bring a C.P.L. § 440.10 motion in the state trial court raising his "mixed" claim of ineffective assistance of trial counsel, the claim cannot be deemed exhausted. *See* 28 U.S.C. § 2254(b)(3) (A habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").

Since Ground One is unexhausted and the remaining claims in the Petition are exhausted (albeit procedurally defaulted), the petition is a so-called "mixed petition." *Zarvela v. Artuz*, 254 F.3d 374, 382 (2d Cir. 2001).  Courts in this Circuit have identified four procedural options available when confronted with a mixed petition: "(1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits [pursuant to 28 U.S.C. § 2254(b)(2)]; (3) allow the petitioner to delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims." *Wesley-Rosa v. Kaplan*, 274 F. Supp. 3d 126, 128 (E.D.N.Y. 2017) (quotation omitted); *see generally Rhines*, 544 U.S. at 277; *Zarvela*, 254 F.3d at 381-82.

"The first option, dismissal of the habeas application in its entirety without prejudice, is only appropriate when doing so would not jeopardize the timeliness of a subsequent collateral attack." *Brewer v. Eckert*, No. 19-CV-6486-FPG, 2020 U.S. Dist. LEXIS 256152, at *14 (W.D.N.Y. Sep. 9, 2020) (citing *Zarvela*, 254 F.3d at 382). Here, as discussed above in this Decision and Order, the statute of limitations expired on January 29, 2016. As such, this option is not appropriate.

The second option derives from 28 U.S.C. § 2254(b)(2) and allows the Court to reach the merits of all the claims in the petition, unexhausted and exhausted. The only outcome with this option is denial of the entire petition. "However, the only outcome with this option is denial of the entire petition." *Bethany v. Noeth*, No. 20-CV-6761-FPG, 2022 WL 17812574, at *6 (W.D.N.Y. Dec. 19, 2022), *on reconsideration in part*, No. 20-CV-6761-FPG, 2023 WL 3051248 (W.D.N.Y. Apr. 24, 2023.  As the Second Circuit has stated, in discussing the 1996 amendments to the habeas statute adding 28 U.S.C. § 2254(b)(2), "[a] district therefore now has the option of denying mixed petitions on the merits." *Turner v. Artuz*, 262 F.3d 118, 122 (2d Cir. 2001).

"Under the third option, [Petitioner] would agree to dismiss, without prejudice, the unexhausted claim from the Petition, removing it from this Court's consideration." *Bethany v. Noeth*, 2022 WL 17812574, at *6.  To avoid dismissing entire petition pursuant to 28 U.S.C. § 2254(b)(2), "a district court may exercise its discretion to presume—unless the petitioner expressly indicates otherwise—that he would rather delete his unexhausted claims than see his entire petition dismissed without regard to the merits of the exhausted claims." *Young v. Great Meadow Corr. Facility*

*Superintendent*, No. 16CV1420PAEBCM, 2017 WL 480608, at *5 (S.D.N.Y. Jan. 10, 2017).

The fourth option, granting a stay and holding the petition in abeyance, is not appropriate here. In *Rhines*, the Supreme Court held that a district court may stay a mixed petition "only in limited circumstances," i.e., "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." 544 U.S. at 277-78. On the other hand, it would be an abuse of discretion to grant a stay when the claims are "plainly meritless." *Id.* at 277.

Petitioner has not asked for a stay and, even if he had, granting one would be an abuse of this Court's discretion because "good cause" is patently absent from this record. By Petitioner's own admission, he was aware of the factual predicate for the unexhausted allegation at the time of trial, yet he has never taken any steps to exhaust it.  "The absence of 'good cause' for the failure to exhaust is fatal to Petitioner's ability to fulfill the *Rhines* standard." *Carr v. Graham*, 27 F. Supp. 3d 363, 365 (W.D.N.Y. 2014) (citing *Rhines*, 544 U.S. at 277 ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.")).

To summarize, the first and fourth options are not appropriate under the circumstances of this case, leaving the Court to select between the second and third

alternatives—denying the entire petition under the authority of § 2254(b)(2), or presuming that Petitioner would rather delete the unexhausted allegation of ineffective assistance and proceed on the exhausted allegations of ineffective assistance, which comprise the bulk of Ground One. Petitioner deliberately included an unexhausted claim in the petition, knowing that it was unexhausted, which does not weigh in favor of presuming that Petitioner would remove this claim if he knew it was unexhausted. Moreover, deleting the allegation in paragraph 23 of the petition that has never been presented to the state courts would not change the outcome of the proceeding— Ground One is unquestionably meritless, with or without the allegation that trial counsel retained a doctor but did not call that individual as a trial witness. Therefore, the Court will proceed according to option two and deny the mixed petition containing deemed exhausted claims (Grounds Two, Three and Four) and an unexhausted claim (Ground One) pursuant to § 28 U.S.C. § 2254(b)(2). Because the only non-procedurally defaulted claim is Ground One, the Court's discussion of the merits of the petition is confined to Ground One.

## V.     Standard of Review Under Section 2254(b)(2)

"The habeas statute does not articulate a standard for denying a petition pursuant to Section 2254(b)(2), and neither the Supreme Court nor the Second Circuit has established one." *Nickels v. Conway*, No. 1:10-cv-0413(MAT), 2015 WL 4478970, at \*18 (W.D.N.Y. July 22, 2015). "The rationale behind 28 U.S.C. § 2254(b)(2) has been described as 'spar[ing] state courts from needlessly wasting their judicial resources on addressing meritless claims solely for the sake of exhaustion.'" *Id.*

(quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010). "On the other hand, comity demands that state courts be afforded the opportunity to pass upon any constitutional claim that is at least potentially meritorious before a federal habeas court decides it." *Brewer v. Eckert*, No. 19-CV-6486-FPG, 2020 WL 10061923, at *5 (W.D.N.Y. Sept. 10, 2020)(quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n. 11 (E.D.N.Y. 2010)).

"In this Circuit, the various formulations for the proper standard to be used share 'the common thread of disposing of unexhausted claims that are unquestionably meritless.'" *Id.* (quoting *Keating*, 708 F. Supp. 2d at 299 n.11 (citing *Williams v. Artus*, 691 F. Supp. 2d 515, 526–27 (S.D.N.Y. 2010) ("plainly meritless"); *Robinson v. Phillips*, No. 04–CV–3446 (FB), 2009 WL 3459479, at *1 (E.D.N.Y. Oct. 23, 2009) ("patently frivolous")). Here, for the reasons which follow, the Court finds that it is appropriate to rely on 28 U.S.C. § 2254(b)(2) to deny the petition because the lack of merit to Ground One "is not subject to debate by reasonable jurists." *Brewer v. Eckert*, 2020 WL 10061923, at *6.

## VI.   Merits of Ground One

### A. Relevant Legal Standards

To succeed on a claim of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), the petitioner must establish that counsel's performance "fell below an objective standard of reasonableness[,]" *id.* at 688, and that the petitioner suffered prejudice as a result, *see id.* at 694. Prejudice, for *Strickland* purposes, is "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694.  "The habeas petitioner bears the burden of establishing both deficient performance and prejudice." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (citation omitted).

### B. Counsel's Alleged Errors

#### 1. Failure to Challenge Prospective Jurors for Cause

Petitioner first argues that counsel should have challenged two jurors, Mary Burger and William Miller, for cause. On direct appeal, the Appellate Division held that this contention "lacks merit inasmuch as defendant failed to show the absence of a strategic explanation for defense counsel's failure to challenge" those jurors. *Irvin*, 974 N.Y.S.2d at 216 (quotation and internal quotation marks omitted). Respondent argues that because neither juror showed bias, there is no likelihood that a challenge-for-cause would have been successful and thus trial counsel cannot be found ineffective.

During *voir dire*, Burger, a retired employee of the jail division of the Cattaraugus County Sheriff's Department, stated that she knew "pretty much" everyone involved in the case, such as the lawyers and the defendant, and "the officer from Olean." However, she confirmed that this familiarity would not affect her ability to serve as a juror. (T: 26-27).  In response to a question about whether Burger believed that an innocent person would sign a confession, the following colloquy ensued:

> MS. BURGER: As you've been talking here, I'm really trying to think this through to make sure I am answering it honestly. You know, I have a tendency to believe that when someone is arrested and they sign a confession, that they are guilty.

25

DEFENSE ATTORNEY: Okay.

MS. BURGER: I think --

DEFENSE ATTORNEY: So, would you have a hard time bringing back a not guilty verdict if there wasn't other proof, as the judge requires you to find, knowing that there's gonna be a confession.

THE COURT: Well, you know, in a way.

PROSECUTOR: I was just gonna object to that.

THE COURT: This is kind of a technical thing. There has to be some proof that a crime occurred, as I'll explain it to you at the end of the case. I mean, if I walked into a police station and said I shot my court clerk this morning, meanwhile she's sitting right here, you know, you obviously can't convict me of that. There's got to be some proof that a crime occurred to corroborate a confession. I'll talk more about that at the end of the case.

MS. BURGER: I certainly feel that I could sit here and listen to the evidence as it's presented and try to, you know, hear it and --

DEFENSE ATTORNEY: Okay. I don't mean to cut you off. From your experience in working at the jail, certainly people get arrested and people spend time in jail for crimes in the end it's determined they didn't do, right?

MS. BURGER: Yes.

(T: 56-57).

Miller, an unmarried, self-employed carpenter, engaged in the following colloquy with trial counsel:

DEFENSE ATTORNEY: Okay. The other thing is you have to be able to find him guilty beyond a reasonable doubt. This is not really the time to talk about the law or talk about it a little bit. It's at the end of the case we'll talk about what the law is. Suffice it to say, reasonable doubt has to be more than I really think he did it. The evidence that you're going to hear, it may convince you that, geez, I really think he did it, but if you have reasonable doubt, as the judge defines reasonable doubt to you, are you going to be able to still bring back a verdict of not guilty? Mr. Miller, can you promise me that?

MR. MILLER: I think I can probably do that.

DEFENSE ATTORNEY: Even if the evidence convinces you that maybe he did it, but you have reasonable doubt as the judge describes it and you'd still be able to bring back a not guilty verdict?

MR. MILLER: It might be tough.

DEFENSE ATTORNEY: Sometimes it is. Is it something you might have a problem with?

MR. MILLER: I might.

DEFENSE ATTORNEY: Is it particularly true because of the nature of these charges?

MR. MILLER: Yes.

(T: 53-54).

Trial counsel exercised for-cause challenges against Kim Spry, Ruth Kohn, and Paula Hitchcock because each prospective juror stated that she would not be able to acquit Petitioner if she believed he committed the crime—even if she had a reasonable doubt about his guilt. The challenges to Spry and Hitchcock were successful. However, because the prosecutor could not recall Kohn giving the problematic answer cited by trial counsel, the trial court denied the defense challenge as to Kohn. (T: 61-62). The prosecutor later exercised a peremptory challenge as to Kohn, so Kohn did not sit on Petitioner's jury. (T: 63).

Selecting a jury and strategy are "inseparable." *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002); see also *Ciaprazi v. Senkowski*, 151 F. App'x 62, 63-64 (2d Cir. 2005) (recognizing that whether to seat a particular juror is a "paradigmatically strategic" decision). Counsel must evaluate not only the juror's words but must assess the juror's credibility by considering her demeanor, her reactions to questions, and other intangible factors that a cold record will not reflect. In addition, counsel must

make judicious use of peremptory challenges, as well as compare jurors with one another to select the best jurors for his client. For these reasons, "courts are loathe to second-guess the decisions of counsel during jury selection." *Ptak v. Superintendent*, No. 08-CV-409, 2009 WL 2496607, at *8 (W.D.N.Y. Aug. 13, 2009) (citing *Doleo v. Reynolds*, No. 00-CV-7927, 2002 WL 922260, at *5 (S.D.N.Y. May 7, 2002)). "It is not the role of the court to second-guess counsel's reasonable strategic decisions at jury selection, especially considering that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Doleo*, 2002 WL 922260, at *5 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052); see also *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) ("Counsel is ... accorded particular deference when conducting *voir dire*. An attorney's actions during *voir dire* are considered to be matters of trial strategy."); *Bell v. United States*, 351 F. App'x 357, 360 (11th Cir. 2009) ("Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility.").

Furthermore, Burger's and Miller's responses during *voir dire* support the conclusion that trial counsel's decision not to challenge them was part of a reasoned strategy.  Burger, who formerly worked in law enforcement and corrections, admitted that innocent people sometimes are arrested for crimes that they do not commit. Her responses also suggested that she was personally acquainted with Petitioner, which trial counsel might have believed was beneficial to Petitioner. Miller expressed a willingness to acquit Petitioner if he had a reasonable doubt about Petitioner's guilt,

even if he also believed that Petitioner had in fact committed the crime. Miller's willingness to acquit under these circumstances stands in contrast to Hitchcock and Spry, who Petitioner successfully challenged for cause based on their unwillingness to acquit, even in the presence of a reasonable doubt.

Miller's acknowledgement that the decision to acquit "might be tough" under those circumstances does not mean that he could not be impartial. The Supreme Court has recognized that the "mere existence of any preconceived notion as to the guilt or innocence of an accused, without more," is not "sufficient to rebut the presumption of a prospective juror's impartiality . . .." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961); *see also United States v. Ploof*, 464 F.2d 116, 117-18 (2d Cir. 1972) (upholding denial of challenge for cause where juror, who had expressed that his view of the case might be affected by the nature of the crime involved, indicated he would "do his best" to decide the case based on the evidence presented).

Similarly, the jurors' use of phrases such as "try to" and "I think" did not rebut the presumption of juror impartiality. The Supreme Court has stated that "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723. It was not unreasonable for trial counsel to determine that Burger's and Miller's response conveyed their ability to do that. *See United States v. Towne*, 870 F.2d 880, 885 (2d Cir. 1989) (where a juror who has expressed his reservations about his ability to be fair later states that he will "try to" decide the case based on the evidence presented, that assurance will generally be sufficient for the attorney and the court); *Miller v. Francis,* 269 F.3d 609,

618 (6th Cir. 2001) ("[V]enire members commonly couch their responses to questions concerning bias in terms of 'I think.' Therefore, the use of such language cannot necessarily be construed as equivocation.").

Neither Burger nor Miller "directly admit[ted] partiality," *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997), and none of their responses reasonably implied that they had "[a]ctual bias is 'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality" *Id.* Because he has not established that they were partial, Petitioner has not demonstrated that he was prejudiced by trial counsel's decision not to challenge these two jurors.

### 2. Failure to Object to Prosecutorial Misconduct During Jury Selection

Petitioner claims that the prosecutor erroneously told prospective jurors during jury selection that the "victim cannot testify here." The full text of the prosecutor's question was, "With respect to the fact that the victim cannot testify here, is there anybody here that would have a problem with that?" (T: 76-77). By "cannot testify," the prosecutor was referring to her earlier explanation to the prospective jurors as to why W.H. would not be testifying:

> A child under nine is not presumed competent, and you would have to have a showing that this person is considered competent in order for them to take an oath to tell the truth. You have to show they understand what that means. In this case our victim is only five. She was four at the time this happened, and she's not a particularly well spoken, articulate child. She's somewhat bilingual. She speaks Spanish and English and not real good to testify in court. So, she will not be testifying.

(T: 41).

Petitioner fails to articulate any basis on which trial counsel should have objected. "The failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance." *Santana v. United States*, No. 15-CR-0457 (JS), 2022 WL 1527269, at *9 (E.D.N.Y. May 13, 2022), *reconsideration denied*, No. 15-CR-0457 (JS), 2022 WL 17824063 (E.D.N.Y. Dec. 20, 2022)(citing *Hicks v. Ercole*, No. 09-CV-2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015); *see also United States v. Regalado*, 518 F.3d 143, 150 n.3 (2d Cir. 2008); *Johnson v. Rivera*, No. 07-CV-0334, 2010 WL 1257923, at *9 (N.D.N.Y. Mar. 25, 2010) ("[C]ounsel [does] not render ineffective assistance by failing to make [an objection that would have been overruled as baseless].") (*citing United States v. DiPaolo*, 804 F.2d 225, 234 (2d Cir. 1986)). There was nothing inaccurate about the prosecutor's explanation, and it was not improper for the prosecutor to ask the jurors whether their decision-making would be affected by the failure of the only eyewitness to the crime to testify.  Without showing that there was a potentially meritorious objection that trial counsel could have made, Petitioner cannot demonstrate that trial counsel performed deficiently or that he was prejudiced by the failure to object.

### 3. Failure to Object to Prosecutorial Misconduct During Opening Statement

Petitioner next asserts that trial counsel should have objected when the prosecutor made several allegedly objectionable comments during opening statement. First, he claims the prosecutor became an unsworn witness by making the following comment:

> [The social worker and Marsfelder are] trained to perform what's called a forensic interview of a child. What this involves is a special technique that has become very well established these days where a child is interviewed with very open ended questions so as not to suggest answers or in any way tamper with their ability to be a witness.

(T: 22). However, the prosecutor simply was describing to the jury what she anticipated Marsfelder's testimony would be. *See United States v. Millan*, 817 F. Supp. 1086, 1088 (S.D.N.Y. 1993)("[T]he opening statement should be an objective summary of the evidence reasonably expected to be produced".) (citing *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988)).   Since the remark was not improper, Petitioner cannot demonstrate that trial counsel's failure to object was professionally unreasonable or resulted in prejudice.

Next, Petitioner claims that the prosecutor erroneously invaded the jury's province by stating that he was not in custody when he gave his statement to the police. (T: 25 ("He was not in custody. He was not restrained in any way. He was free to leave. . .."). Read in context, the prosecutor's remark simply summarized the proof she expected to introduce at trial, which is not improper. *See Millan*, 817 F. Supp. at 1088. To the extent that the remark was erroneous, the issue of Petitioner's custodial status was not highly contested. Indeed, neither of the attorneys discussed it in their summation. Therefore, Petitioner has not demonstrated a reasonable probability that the remark detrimentally affected the verdict.

Last, Petitioner faults trial counsel for failing to object when the prosecutor commented that he "provided a full confession to what he had done to [the victim] that

was consistent with her injuries and what everybody else knew to be the facts of the case." (T: 24-25). According to Petitioner, this was an erroneous variance from the proof since there were no eyewitnesses to the incident and the victim did not testify. The Supreme Court, however, has stated that "not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given." *Frazier v. Cupp*, 394 U.S. 731, 735-36 (1969).

Assuming that the reference to "everybody else" could be interpreted to imply the existence of eyewitnesses, Petitioner has not demonstrated that trial counsel's failure to object prejudiced his case. First, the remark itself was brief and was not repeated or otherwise emphasized by the prosecutor. Second, the trial court instructed the jury before opening statements that the attorneys' remarks were "not evidence." (T: 5). Later, the trial court again instructed the jury to

> remember that the lawyers are not witnesses. So, if a lawyer asserts something that's not based on the evidence, you must disregard it. Remember that nothing the lawyers say at any time is evidence.

(T: 123).   Courts generally presume that juries follow limiting instructions. *See*, *e.g.*, *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) ("Absent . . . extraordinary situations . . . we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions."). Petitioner has failed to articulate any reason why the presumption should not hold in his case. Given the fleeting nature of the comment and the court's proper limiting instructions, Petitioner has not demonstrated a reasonable probability that trial counsel's failure to object affected the

verdict. *See United States v. Rivera*, 971 F.2d 876, 885 (2d Cir. 1992) (finding that the trial court's instructions cured any prejudice arising from prosecutorial error).

### 4.  Failure to Object to Confrontation Clause Errors

Petitioner faults trial counsel for failing to object to W.H.'s failure to testify at trial; and failing to object when Marsfelder testified that during the social worker's interview of W.H., "there was a disclosure that the suspect was Wayne Irvin". Petitioner asserts that trial counsel should have objected to Marsfelder's testimony as violative of the Confrontation Clause and C.P.L. § 60.25. On direct appeal, in addition to arguing that trial counsel erroneously failed to object to these alleged Confrontation Clause errors, Petitioner raised the Confrontation Clause claims as a stand-alone claims for relief.

### a.  Failure to Object to W.H.'s Failure to Testify

Regarding W.H.'s failure to testify, the Appellate Division held that "[t]o the extent that defendant contends that he was deprived of his right of confrontation by the victim's failure to testify, that contention is unpreserved for our review and, in any event, is without merit". *Irvin*, 111 A.D.3d at 1294. Because the Appellate Division considered the merits of the Confrontation Clause claim based on W.H.'s failure to testify, notwithstanding trial counsel's failure to make a contemporaneous objection, Petitioner cannot demonstrate that he was prejudiced by trial counsel's omission. *Swail v. Hunt*, 742 F. Supp. 2d 352, 364 (W.D.N.Y. 2010)("[D]efendant cannot demonstrate that he was prejudiced by trial counsel's failure to preserve the

insufficiency claim …, because the Appellate Division considered the merits of the insufficiency claim, notwithstanding the lack of preservation.").  Furthermore, since the Appellate Division rejected the claim on the merits, Petitioner has not shown that there was a reasonable probability that an objection by trial counsel would have been successful.

### b. Marsfelder's Testimony

According to Petitioner, because W.H. did not testify at trial, Marsfelder's testimony violated the Sixth Amendment's Confrontation Clause's general prohibition on the introduction of "testimonial" statements from a witness who does not appear at trial, unless the witness is unavailable to testify at trial, and the defendant has had a prior opportunity for cross-examination. *Crawford v. Washington, 541 U.S. 36, 54 (2004)*. Petitioner also reiterates his argument from direct appeal that Marsfelder's testimony amounted to "third-party identification" testimony, and that the prosecution had not demonstrated the prerequisites for its admission under C.P.L. § 60.25. (SR: 230).

The latter contention is based on a misunderstanding of the applicable law. "By its terms, CPL 60.25 does not allow third-party testimony confirming a pretrial identification by a nontestifying witness. Instead, the statute expressly delineates preconditions and the particular instances for the admission of previous identification evidence, in the absence of trial-present identification." *People v. Patterson*, 93 N.Y.2d 80, 82 (1999). "[T]he testimony of a third party non-identifying witness is allowed as evidence-in-chief under the statute only when coupled with the real identifying

witness's testimony as to the prior identification". *Id.* at 83. Because W.H. did not testify, this procedural rule is irrelevant. Trial counsel was not ineffective for declining to make a meritless objection.

The Court turns next to the alleged Confrontation Clause error in Marsfelder's testimony. The Appellate Division held that Petitioner "failed to preserve for . . . review his contention that the testimony of a police witness regarding his observations of the victim's interview deprived him of his right of confrontation". *Irvin*, 111 A.D.3d at 1295. The Appellate Division went on to find that, "even assuming, *arguendo*, that the police witness's testimony equated to the introduction of the victim's testimonial statements in evidence," "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted". *Id.* (quotations and quotation marks omitted; alterations and ellipsis in original). The Appellate Division explained that the "testimony was properly admitted in evidence for the purpose of explaining the police witness's actions and the sequence of events leading to defendant's arrest". *Id.* (citations omitted).

Because the Appellate Division considered the merits of this stand-alone Confrontation Clause claim, notwithstanding trial counsel's failure to make a contemporaneous objection, Petitioner cannot demonstrate that he was prejudiced by trial counsel's failure to object. Furthermore, since the Appellate Division rejected the claim on the merits, Petitioner has not shown that there was a reasonable probability the trial court would have sustained an objection by trial counsel at the time. Thus, he has not shown that trial counsel performed in a professionally unreasonable matter.

### 5. Failure to Object to a Comment Implying Petitioner Had "Something to Hide"

Petitioner asserts his lawyer did not object "when the prosecutor stated, in light of the subsequent alleged confession, [sic] 'made it appear that he had something to hide." Based on a review of Petitioner's appellate brief, he is not challenging a comment by the prosecutor. Instead, he is apparently referring to his argument that "[d]efense counsel also failed to seek preclusion of appellant's 'incriminating statement that had not been noticed pursuant to CPL 710.30'." (SR: 231; *see also* SR: 34, 43). The unnoticed, allegedly "incriminating statement" is Petitioner's initial denial to Marsfelder and Richardson that W.H. had stayed overnight at his apartment. (SR: 231). Petitioner argued on direct appeal that "in light of the subsequent confession, [his statement about W.H. not staying overnight] made it appear that he had something to hide." (SR: 231). Thus, Petitioner argues, the error was so prejudicial that counsel's failure to move for preclusion based on lack of notice cannot be deemed strategic in nature.

C.P.L. § 710.30(1)(a) states that "[w]henever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion . . . they must serve the defendant a notice of such intention, specifying the evidence intended to be offered." C.P.L. § 710.30(2) provides that such notice must be served on the defendant within fifteen days after arraignment, but the trial court may allow the People to serve late notice upon a showing of "good cause."

Petitioner cannot demonstrate that he was prejudiced by trial counsel's failure to move for preclusion of his unnoticed oral statement, or that trial counsel was objectively unreasonable in declining to move for preclusion.   Significantly, the unnoticed comment was exculpatory—Petitioner was denying that he had the opportunity to commit the acts that Marsfelder said he was accused of committing. Thus, there is no reasonable possibility, let alone probability, that the unnoticed oral comment affected the verdict, which was amply supported by his extremely detailed and voluntarily given written statement.  *People v. Costello*, 92 A.D.2d 947, 948, 460 N.Y.S.2d 636, 638 (3rd Dep't. 1983)("[F]ailure to furnish notice that a State Police investigator would repeat a statement made by defendant, that he had not seen [victim] on the day the latter was ambushed, was a shortcoming without consequence because it could not possibly be construed as being incriminatory."); *cf. People v. Reed*, 546 N.Y.S.2d 640, 641 (N.Y. App. Div. 1989) (although admission of two statements made by defendant was error because People failed to comply with 15–day notice requirement and also failed to establish good cause for delay in notifying defendant, such error was harmless insofar as statements were exculpatory in nature and varied only slightly from other statement made by defendant which was properly admitted, and there was overwhelming proof of defendant's guilt).   Accordingly, Petitioner has not established ineffective assistance on this basis.

### 6.  Failure to Object to Prosecutorial Misconduct During Summation

Petitioner repeats his assertion from the leave letter that "[d]efense counsel also failed to object to misconduct during the prosecutor's summation when she

commented on appellant's failure to testify, shifted the burden of proof, vouched for the credibility of her witness, denigrated the defense, and told the jury that a defense witness was not telling the truth." (SR: 231). The leave letter then identifies four objectionable remarks, which the Court considers in turn below.

First, according to Petitioner, the prosecutor improperly commented on his failure to testify when she argued that if Petitioner were innocent, he would have "vehement[ly]" denied abusing W.H., as his brother Russell did. The prosecutor commented that innocent people "don't make up details, put them in a written statement and sign it with the police. They say no, I didn't do that. And I would submit to you if the defendant didn't do this, he would have done the same thing." (T: 137-38). Petitioner contends that this amounted to a comment on his failure to testify. The Court disagrees and finds that the prosecutor was simply arguing that the jury should accept the extremely detailed confession provided by Petitioner as evidence of his guilt.   In *United States v. Rosario*, 652 F. App'x 38, 40–41 (2d Cir. 2016), the prosecutor, much like the prosecutor in this case, "commented in summation on [defendant]'s post-arrest statement and whether his statement comported with what an innocent person would have said."  As the Court noted in rejecting such argument, "[defendant]'s challenge to this comment suffers from two fatal flaws. First, the [prosecutor] did not comment on [defendant]'s silence, but rather, the responses he gave. Second, this response was given after [defendant] was read his *Miranda* rights, waived those rights, and chose to speak with investigators. The challenged comments

by the AUSA therefore were not improper." *Id*., at 41 (citation omitted).   As the comment was not improper, defense counsel did not err in failing to object.[8]

Second, Petitioner faults trial counsel for failing to object, based on improper vouching, when the prosecutor stated that Dr. Salzmann had a "wealth of experience." Given Dr. Salzmann's testimony concerning her background and extensive training (T:  31-32), this was not outside the bounds of fair commentary on the evidence.

Third, Petitioner asserts that trial counsel erred in failing to object when the prosecutor said that Bremiller was "not telling the truth". (T: 136-37). For context, the prosecutor asked the jury whether it was reasonable to believe that Bremiller could have a detailed memory of August 15, 2011, a run-of-the-mill day when nothing happened, but then be able to recall her own criminal convictions. The prosecutor specifically pointed to various parts of Bremiller's testimony and urged the jury to conclude that, based on these incongruities, Bremiller was not telling the truth about Petitioner's activities on the date in question.

The Second Circuit has observed that "it is not ordinarily improper for the prosecution to make temperate use of forms of the word 'lie' to highlight evidence directly conflicting with the defense's testimony, or 'to characterize disputed testimony' where credibility was clearly an issue. . .." *United States v. Shareef*, 190 F.3d 71, 79 (2d Cir. 1999) (quotation omitted). That is an appropriate way to characterize the

---

[8] The Court notes that when the prosecutor did make a remark that improperly alluded to his failure to testify, trial counsel objected and requested a curative instruction. The trial court sustained the objection, and the prosecutor withdrew the comment. (T: 132).

prosecutor's comment about Bremiller "not telling the truth" in this case. Since the comment was not outside the bounds of acceptable commentary on Bremiller's lack of veracity, it is unlikely that an objection by trial counsel would have been sustained. Thus, Petitioner has not established that trial counsel failure to object was professionally unreasonable or that it resulted in prejudice to the defense.

Fourth and last, Petitioner contends that trial counsel should have objected when the prosecutor, in her closing argument, allegedly denigrated a defense argument based on a diagram shown by counsel to Dr. Salzmann as "just a trick". (T: 132). Respondent argues that this was fair comment on the evidence and thus not improper. The basis for this remark occurred during cross-examination of Dr. Salzmann, when trial counsel showed her a diagram of a hymen from an article published in an online medical resource. The diagram purported to show anatomic variations of a normal hymen, including notches. Dr. Salzmann agreed that notches in the posterior hymen can be a normal variation; however, "it depends on the depth of the notch." (T: 43-44).

Trial counsel sought to offer the article into evidence, and the prosecutor requested opportunity to *voir dire*. Dr. Salzmann testified that the image shown by defense counsel did not accurately depict what a normal hymen would look like in a four-year-old child. The trial court reserved on trial counsel's request. On redirect, Dr. Salzmann explained that what she observed via colposcopy of W.H.'s hymen were "deep" notches, "comparable to a scar"—not a normal anatomic variation. (T: 45-46).

During his summation, trial counsel referred to this diagram as "Defense Exhibit A-1" though it is not clear from the transcript when it was admitted. Counsel acknowledged that Dr. Salzmann said the depiction was "not normal," but noted her agreement that the online resource from which it came was generally considered reliable in the medical community. He asked the jury to compare the diagram with the photographs of W.H.'s hymen and argued that they were "going to see it's pretty close to identical." He argued that it could be "evidence of sexual abuse", but it was not "proof of sexual abuse". (T: 125-26).

During her summation, the prosecutor commented in response,

> I would submit to you . . . Dr. Salzmann testified that this reproduction here [i.e., Defense Exhibit A-1] does not represent a normal hymen on a four year old child. So, asking you to compare this is like asking you to compare it to something that it's not supposed to be. It's just a trick basically.
>
> This picture which was identified as being a normal vagina by Dr. Salzmann of a child who has not been sexually active should be compared with the photographs [of W.H.], which photographs which she took and indicated were notching. When you put these two next to each other, it doesn't get any clearer than that. This is what it's supposed to look like; this is what it looks like (indicating).

(T: 132-33).

The prosecutor did not improperly "mischaracterize the evidence or refer in summation to facts not in evidence." *United States v. Rosa*, 17 F.3d 1531, 1548-49 (2d Cir. 1994). Rather, the prosecutor's comments on the diagram were fair comment on the evidence and responsive to trial counsel's argument that the diagram was a depiction of a normal hymen. Even if trial counsel had objected to the prosecutor's "just a trick" comment, the trial court likely would have overruled the objection. *See*

*People v. Galloway*, 54 N.Y.2d 396, 399 (1981) ("[T]he prosecutor's characterization, in summation, of the defense's contention that the witness Cruz possessed a gun as a 'smokescreen' or 'a red herring' and his aspersions on the credibility of the defendant's and the witness Taylor's testimony did not exceed the broad bounds of rhetorical comment permissible in closing argument."); *People v. Guerrero*, 629 N.Y.S.2d 234, 234 (N.Y. App. Div. 1995) (stating that "characterization of defendant's testimony as a 'fairytale'" was "properly responsive to defense arguments and constituted fair comment on the evidence presented within the broad bounds of rhetorical comment permissible in closing argument").

If trial counsel believed the "just a trick" remark was objectionable, it was not unreasonable for him to refrain from making an objection that was likely to be overruled and would have called the jury's attention to the comment. Even if the comment was better left unsaid, it was so mild that there is no reasonable probability it prejudiced the defense. *See United States v. Resto*, 824 F.2d 210, 212 (2d Cir. 1987) ("find[ing] no ground for reversal in the prosecutor's references to specific defense tactics as 'slick bits' and 'slyness' or in his statements that the defense engaged in 'sleight-of-hand' and tried to pull the wool over the jury's eyes").

### 7.  Failure to Call "the Doctor" at Trial

Petitioner contends that trial counsel was ineffective because he required Petitioner's parents to "bring him $500" "for a doctor," but "the doctor" did not testify at trial. (Dkt. No. 1, ¶ 23). Construing the *pro se* allegations liberally, as required, the

Court interprets them as asserting ineffectiveness based on trial counsel's failure to call an expert witness to rebut Dr. Salzmann's testimony.

Even in child sexual abuse cases, "there is no *per se* rule that requires trial attorneys to seek out an expert." *Gersten v. Senkowski*, 426 F.3d 588, 609 (2d Cir. 2005). "The decision not to call a particular witness is typically a question of trial strategy that courts are ill-suited to second guess . . . [C]ounsel's decision as to whether to call specific witnesses--even ones that might offer exculpatory evidence— is ordinarily not viewed as a lapse in professional judgment." *Greiner*, 417 F.3d at 323 (internal citations and quotations omitted).

Petitioner's claim about the uncalled "doctor" is based entirely on his self-serving and unsupported assumption that there actually existed a doctor, with whom trial counsel had consulted, who would have testified differently than the prosecution's medical expert and favorably for the defense. There are no facts provided by Petitioner to support this version of events, which alone is sufficient to deny the claim. *See Eisemann v. Herbert*, 401 F.3d 102, 108 (2d Cir. 2005).  On this record, it is equally possible that, after consulting with the unidentified doctor, trial counsel determined that he or she would not be able to provide favorable testimony for Petitioner's case and, accordingly, trial counsel made a reasonable strategic decision not to call him or her.

In any event, the Court observes that trial counsel conducted a skilled and effective cross-examination of Dr. Salzmann, demonstrating his familiarity with the types of medical issues that arise in child sexual abuse cases and relevant literature

on the subject. Because Petitioner has offered only speculation in support of this claim, he is unable to establish that he was prejudiced by trial counsel's failure to call "the doctor" or that trial counsel's decision was objectively unreasonable under the circumstances.

## CONCLUSION

For the reasons stated above, the Petition (Dkt. No. 1) is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c)(1), the Court declines to issue a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2). Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied. Petitioner is advised that "Federal Rule of Appellate Procedure 4(a) governs the time to appeal," and "[a] timely notice of appeal must be filed even" though the Court declined to issue a certificate of appealability. Rule 11(b) of the Rules Governing Section 2254 Proceedings.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

Dated:  March 27, 2024
Buffalo, New York.

45